on the docket. And the first case is, I hope I'm pronouncing this right, but you can correct me. It's Zev Zyuba v. Mukasey. Good morning. May it please the Court. My name is Hillary Hahn, and I appear on behalf of the petitioner today. The only issue before the Court is whether, under the facts of this case, the Ukraine is the country from which Mr. Zyuba was admitted to the United States. As the Court is aware, Section 1231b2e lays out a number of different categories of countries to which a person can be deported if other categories fail. So if the country to which the person designates or the country of which the person is a citizen or national is not a practical country for deportation, there are seven additional countries. In this particular case, the Board of Immigration Appeals found that Subsection 1 was a country to which Mr. Zyuba could be deported, and that's the Ukraine. And on that basis, they upheld the immigration judge's designation of the Ukraine as a proper country of removal. The government argues that countries should be equated with geographical area. And under their interpretation, the Ukraine is a geographical area from which Mr. Zyuba was admitted into the United States and, as such, is a proper country for designation. We believe that the plain language of the statute is contrary to that for a number of different reasons. First and most importantly... Let me ask you first. Is there any doubt whatsoever that Ukraine would qualify under not single small i, but double small i, the country in which is located the foreign port? I think there is a doubt, because he came most likely... I believe the record reflects that he came from Moscow, and so that's a foreign port. So Russia potentially could be a country of... a potential country. Did he fly from Moscow? Is that what you're saying? That's my understanding. I... you know, there's nothing in the administrative record... With a Soviet passport. With a Soviet passport. So he was technically admitted from the Soviet Union. That's correct. And Ukraine didn't exist. Right. And now the Soviet Union doesn't exist. Right. Ukraine existed. Sorry, the Ukraine didn't exist at the time. It didn't exist at the time. Ukraine existed. You said Ukraine in 1980, in 1970, in 1960. Everybody would have understood what you were talking about, correct? Sure. And, indeed, there was a member of the United Nations. The Ukrainian SSR was a member of the United Nations and was recognized as such well before the events that led to the independence of Ukraine. Right. But it wasn't an independent country. Right. So what was it? It was a territory of the Soviet Union. And the Soviet Union was... A region. So can you analogize to a part of the United States? Sure. I mean, for example, if you... you know, if I immigrated to another country and I lived in the state of Washington, if I were to say, you know, I'm from Washington, that's true, but that's not the country from which I'm leaving. The country from which I'm leaving is the United States. But if we buy your argument, aren't we really saying, then, that no one could be sent back to the U.S.S.R. because it's split into so many countries now? The only place we can send them back, under this particular statute, is Russia. And if they didn't come from the Russia now, then, and we're not even sure that's the U.S.S.R., that they can't be sent back at all. So if we buy your argument, we're really saying, well, by happenstance only, by the fact that politicians get together and decide, you can't then be sent back to some place where, under every idea, he's from Ukraine, he stayed there for 19 years, he... part of that, he was Ukrainian descent. You're just saying, because the statute says what it does, that's the way it is. Well, I do think that there's some need to interpret the plain language of the statute. But beyond that, I... Well, the plain language of the statute, after all, has been interpreted in other situations, like, we just have to go to the B-A-J-A-L-I-E-H, for an Idaho guy, that's Bajalia, that's a polyamnist Idaho country. But that case would say, hey, there's a good application of this. Sure. The reason that that case, I think, is distinguishable is because that interpreted a different statute. In this statute, section 1231B2E is a comprehensive statutory scheme. And it has – it lays out a number of different categories of countries to which a person can be deported. And to get back to your other question, Your Honor, under our interpretation, Mr. Zuba can be deported to a number of different countries. He can be deported to Georgia under subsection 6. Well, he resisted that. He plainly does not want that. And he obtained relief with regard to Georgia. Right. Right. But, I mean, I'm not saying that a person from the Soviet Union can't be deported. And had he not been subject to persecution, if he went there, that's where he'd be. Would he rather go to Russia? I mean, you've identified that as an alternative. Because you responded double-I by saying that, well, he came from Moscow, and the way it's phrased, the country in which the foreign port – the argument you're currently offering doesn't seem to bar Russia. Would he prefer Russia to Ukraine? Well, I think that the issue before the court is whether Ukraine is a proper country. It's – Where do we turn – I mean, I think what happened here was the BIA and the IJ didn't really consider how you would define country. This went back and forth and back and forth. And they were considering other issues, the withholding issue and – I don't know. It all got confused, which probably would warrant some kind of a remand here. But to what do we turn for the definition of country? Well, I think that the board's decision in Manner of Linus, which we cited, the 1985 board decision, is helpful in that it talks about country requiring both a geographical territory and some sort of political entity, some sort of government. And, you know, the board itself is the one who said that. And I think it's – I think that's useful in making every word of Section 1231b2e mean something. Because under our interpretation, the country from which he was admitted was the former Soviet Union. And that way, for example, under the government's geographical area, subsections 4 and 6 would be entirely redundant of each other. Subsection 4 allows removal to the country in which the alien was born. Subsection 6 to the country in which is located the alien's birthplace. If you substitute a geographical area for country, then it's exactly the same thing, the geographical area in which the alien was born. Not necessarily. Borders move. So you can have somebody who's born in a place that at one time was part of France and is later part of Germany or vice versa. Right. And that's our argument. But if you talk about – if you used country as geographical area, then the geographical area is the same. And then the country – so if – No. Take my example. Suppose somebody was born – maybe a more recent example would be Germany and Poland. Part – at the time the person was born, the country – he might have been born in Germany. And so under 4, the country in which the alien was born was Germany. But under 6, the country in which the alien's birthplace is located when the alien is ordered removed, that could be Poland. Right. But – Those are different things. Right. That's our argument, though. The government's argument is you deport the person to the geographical area, and the geographical area is the same. No, no, no, no. No, the government could take that and say, that means we can go either place. We're not limited to where the birthplace is. We could go to either Germany or Poland. Either one qualify under this using the government's definition of country. I don't think it's necessarily redundant to use the government's definition of country. If you recognize that one of the situations could be not simply a change in regime or government structure, it could be a movement of the border. Okay. I mean, I think that the use of geographical area, to me, that implies something different than – that seems to be irregardless of political entity. And I think that's actually what the Mensovich case said, in which they talked about geographical area. Well, so I think – and I'm going to ask the government this question, too. I mean, you have to read the word country to mean the same thing in the statute, section 1231. And there's other places where the statute talks about the country – the government of the country. And so I guess I'm wondering if it makes sense to have – to have it be geographical regions that don't necessarily have governments, because the statute, in other parts, seems to assume that a country will have – there will be the country and it will have the government. Right. And I don't know if country necessarily – if a country necessarily requires a government, then it can't really be a region. Well, I think that – Necessarily, although a state would have a government. I mean, if you say the government of a country, that means that the country has a government. And so, I mean, I think that's – I don't think that that's determinative either way. I mean, I think that under our interpretation, a country has both a geographical area and a government. And so that would be consistent with talking about the government of a country. I know I'm out of time, but – It would be nice if Congress were clearer on these things. It would. With the scheme that they might be. They don't want to put us out of a job now. All right. Thank you, Counsel. May it please the Court. Ada Vosk on behalf of the Attorney General. The Board recently found that the Ukraine was properly designated under 1231b2e1 as a country removal. As the Court has already noted, Mr. Zuba moved to what is the Ukraine when he was about 7 years old. He lived there for 19 years. This is the first time that we've heard that he's argued that he came not from the Ukraine but from Russia or from Moscow. He hasn't disputed that he entered the United States from what is now the Ukraine. His argument to date has been that the Ukraine wasn't a country for purposes of 1231b2e1 because it was part of the Soviet Union. I guess to go from there, and I would add that in all of his applications for relief, Mr. Zuba has identified himself as Ukrainian, of Ukrainian nationality. Did he in any of his applications list Ukraine as a place to which he could be deported? I – if the Court will give me a second, I have a question. I don't think so, but I don't – I don't believe he designated a country of removal at all. So what Mr. Zuba has presented here is his interpretation of what the word country should mean. And the meaning of the word country for removal purposes has been settled since the Supreme Court's decision in United States v. Menchevich. And as Judge – as the Court has already noted, in that case, the alien was coming from Grodno, which at that point was part of Russia. And when he was about to be deported, Grodno was part of Poland. And the Court agreed that Poland was properly designated as the country of removal. And it did so because – and in doing so, it defined country. And that is the interpretation that the agency has used since 1924, and it's the definition that the courts have used since that time. And that definition is slightly different than what Mr. Zuba has represented before this Court. And that is it defined it as a state, which at the time of departure includes the place from which the alien came. So it's incorrect to just say geographic place. For – our example is Myanmar. If an alien came from – But he just said that he came from Moscow. Well, that is the first time we've heard that, Your Honor. He – throughout these proceedings – and granted, throughout the immigration proceedings, his primary argument was that he wasn't a citizen of the Ukraine. But as his arguments have evolved, it has come to whether the Ukraine is – whether he was admitted from the Ukraine because the Ukraine wasn't a country at the time of his removal. It was part of the Soviet Union. That is a very different argument than the argument he's making – suggesting now that he came from Moscow. But technically, the BIA said he could be removed to Ukraine under Section E, little i. And if Ukraine wasn't a country from which he was admitted, since it seems as though he may have been admitted from Moscow, I mean, isn't it just as easy to send it back and have him deported to Russia under Section 2? Well, Your Honor, that sort of violates the principles of exhaustion. He's had numerous opportunities to argue both before the immigration judge and the Board that he came from Russia. He hasn't. He argued that he did not want to go to Georgia because he feared persecution and torture there. And he argued that he wasn't a citizen of the Ukraine and therefore could not go to the Ukraine. None of those arguments he's raised before this Court. The only issue he's raised is that he was not admitted from the Ukraine because the Ukraine wasn't a country at the time of his – at the time that he left because it was part of the Soviet Union. And again, under both Supreme Court precedent and most recently both the Seventh and the Eighth Circuits have analyzed this exact section and concluded that Latvia, which is also a former Soviet Republic, is a country because it is a country for removal because it is a state which at the time of the departure includes the place from which the alien came. The agency in the preamble to its regulations uses the same definition. It's not a new definition. And this Court, as the Court has previously noted, applied that definition in the context of the Refugee Relief Act. And that case is interesting for two reasons. First, because the alien there, like Mr. Zuba, said he was stateless. And his argument was very much like Mr. Zuba's. That is, that when he left, it was British Palestine, and when he was going to be removed – or deported, excuse me, it was Transjordan. And he could not be removed to Transjordan because that didn't exist when he left British Palestine. And although the Court recognized that it was interpreting the Refugee Relief Act and not the INA, it said that we see no reason to apply a different definition. The definition of country is the same definition that the Supreme Court has applied in 1924, and it's the same definition that has been applied since that time. And I think, as the Court has already noted as well, we don't believe that the definition renders portions of the statute redundant. But since 1924, Congress has had ample opportunity, given the consistency with which this definition has been applied, to change it if it felt it was necessary. But it's not redundant. The Supreme Court in Jamaa v. INS recognized that certain portions of the statute may – there may be some overlap. If you were born in the United States – or I guess that's not a good example. But if you were born in Colombia, for example, Colombia is going to be Colombia, your birthplace, your sovereign – the country that had sovereignty over you no matter, I guess, within recent history. I think what Zuba does is that – and I think the Court mentioned this as well – is that he ignores some of the modifiers, and that's how he gets into this redundancy issue. In 1231 B2E5, the statute specifically says the country that had sovereignty, which could be different than – as the Court has recognized – than the country where the alien was born or the country in which the birthplace now is located. And I try to think of Hong Kong as an example, because Hong Kong – an alien might be born in Hong Kong. Depending on when he was born, the United Kingdom might have had sovereignty, but currently it is considered part of China. And so those – there are various iterations that can be done, but the fact that there's overlap doesn't mean that the statute is rendered redundant. I would also note that Zuba's argument essentially makes it – hampers the agency's ability to remove individuals that are clearly removable. And Mr. Zuba has not contested that he is, as an aggravated felon, clearly removable. And the Supreme Court also in JAMA said that there is every reason to refrain from reading restrictions into the country designation process, particularly restrictions on what is this, the third step of the country designation process. Wait a second. So what is the evidence in the record that Ukraine – using your broad definition of country – is the place from which the alien was admitted? Because he has a Soviet passport. What's the evidence that he was admitted from, say, the region of Ukraine? Sure. We would point the court to – and again, he – up until today he has not disputed that. But we would point the court to portions of the administrative record at 115, 125, 401, and 558. And I was – Slow down. Sorry. Okay. What portions of the record would you point us to? 115, 125, 401, 558. And then in his transcript – I was trying to look real quickly while the court was hearing argument, I can provide the court additional citations from the transcript itself. I was trying to do that real quickly. He doesn't really dispute it now. What he disputes is when I said, what about Section III, which raises a different question. That's the foreign port question. But I don't think there's been any dispute that Ukraine is where he was before he came here. He may well be right that you can't transit directly from Kiev to New York or something. So he may well have passed through Moscow, making that the foreign port. But I haven't seen any indication that he disputes Ukraine as where he generally was before he came to the United States. Right. He certainly didn't argue that before the agency. I guess in conclusion, we would say the court in JAMA, the Supreme Court in JAMA, indicated that – it explained that the purpose of this particular regulation, as I said, is to facilitate removing clearly removable aliens. Here, Mr. Zuba's interpretation would hamper the agency's ability to do that. Whereas the agency's – Can I ask you one more question? Sure. The BIA says that E1 is the correct point, saying the country from which the alien was admitted to the United States. And then he says the respondent was admitted to the United States from the Ukraine and had a Ukrainian passport. Now, that's clearly incorrect, right? Well – He did not have a Ukrainian passport. He initially represented that he did. But the actual passport in the record is a Soviet Union passport. It does – it is not a translated version of it, but it does seem to be a passport. That issue – the issue of the passport really goes to his first argument before the board. You know, the BIA says it's a Ukrainian passport, and the passport itself says it's a Soviet Union passport. I understood, Your Honor. The – that – under 1231B2E1, it really doesn't matter what passport he was using. The fact is that he entered from what is now the Ukraine. But you understand that the BIA thought it mattered. Otherwise, it wouldn't have included that statement in the opinion it issued.  The BIA says this, so obviously the judge thinks it has some relevance. I mean, otherwise he wouldn't say it. So he said it, it's incorrect. We don't just brush it off. What do we do with it? Well, at most, Your Honor, it would be harmless error because it has nothing really to do with whether he was admitted from the Ukraine. It is additional evidence that Mr. Zuba throughout his proceedings really represented himself as somebody that had connections to Ukraine. Well, it's also evidence that the BIA had its facts wrong, which is not unusual either. Mr. – understood that the legal argument – and Mr. Zuba can only raise a legal argument that he has raised before this Court is the definition of country, and whether it includes a country that was part of the former Soviet Union as it does here. No different than if somebody came from Burma and we were sending them back to Myanmar now. The geographic – the state which includes that geographic area, the legal definition remains the same. Yes, I guess the Board could have been more precise in the way it – which would have not handed Mr. Zuba his appeal. Well, that's – again, that hasn't been the principal basis of his appeal, but at most it's a harmless error because it hasn't really – it's sort of beside the point of when he was admitted. We don't review – we don't have that concept in reviewing immigration cases. I mean, it all comes in as part of the mix, but we don't have that harmless error concept in the context of immigration law. Criminal law, yeah. But, again – It's okay. You're over your time. I think we get the argument, and I'll take it under submission. Thank you.
judges: Wardlaw, Clifton, Smith